UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY PRO SE OFFICE

2025 JUL 17 PM 3: 33

-------------------------------------------------------------------------------

Alexia Dodd,

1:25 Civ. 03450

                          Plaintiff,

SECOND AMENDED
COMPLAINT FOR
DECLARATORY
JUDGMENT

                    -- against --

State of New York and the State of New York
Department of Motor Vehicles.

                          Defendants.
-------------------------------------------------------------------------------X

## Jurisdiction and Venue

1.      Alexia Dodd ("I") brings this Complaint seeking a declaratory judgment from this Court under 28 U.S.C. 2201 and 2202 et seq. up to and including a full trial of this matter regarding the defendants' ongoing violations of federal law including the failure to provide necessary reasonable accommodations and the failure to act in good faith in the interactive process as required under Section 504 of the Rehabilitation Act.

2.      This Court has jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. Sections 2201 and 2202. Moreover, this Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. Sections 1331, 1343(a)(3), and 1343(a)(4) as this is a civil action arising under the laws of the United States.

3.      Pursuant to 28 U.S.C. Section 1391(b), venue is proper in this District because one or more of the parties is located within this District. Moreover, the defendants, State of New York, ("State of New York"), and State of New York Department of Motor Vehicles, ("DMV"), operate and have offices in this District.

PARTIES

4.      I reside in Staten Island, New York; and I am a civil service employee of the State of New York.

5.      State of New York is a public employer who employs civil service employees. State of New York and DMV receive federal funding.

FACTUAL ALLEGATIONS

6.      On March 27, 2025, I began my employment as Administrative Law Judge at the DMV. I was hired by the DMV because I am qualified for the job. My previous experiences include working as an Assistant Attorney General for the State of New York Office of the Attorney General appearing in court, litigating cases from beginning to end, conducting depositions, motion practice, negotiating settlements and trying cases. I also previously worked as a Hearing Officer for the New York City Office of Administrative Trials and Hearings for two years where I adjudicated cases brought by the city for allegations of administrative code violations. In that capacity, I took evidence from parties and expert witnesses, I conducted legal research, and I wrote binding decisions. At a preliminary conference for this case, the attorney for the State of New York, Clement Colucci, stated in response to the Court's question regarding this issue as follows: "obviously, she is qualified for the job, we hired her for the job."

7.      The responsibilities for this position at the DMV are holding hearings of motorists who have allegedly broken speeding laws, making binding decisions on those tickets and doing hearing reschedules. The hearing reschedules are done remotely 3 days per week based on what I was told by Michael Schiavo, ("Schiavo"), Head Judge of Richmond County DMV, during my interview and based on my observation of some of the Administrative Law Judges at the job; and an Administrative Law Judge named Natasha Grinberg ("ALJ Grinberg"), conducts all of her

hearings / work remotely from another state with the exception of appearing 1 day per month at the Richmond County DMV.

8. The job posting for this position stated that there were many benefits to this job including paid leave, paid holidays, pension, health insurance, dental and vision coverage, flex spending, voluntary 457B Retirement Saving Program, Health Care Spending Account, Tuition Assistance Programs, Public Service Loan Forgiveness Program, Transportation Savings Program and other Employee Assistance Programs. (See job posting attached as Exhibit "E").

9. The primary reason I took the position at the DMV is for the medical health insurance benefits. Specifically, the State of New York, offers medical health insurance benefits at retirement after 10 years of service. I previously worked for 7 years for the State of New York at another state agency from August 2011 to October 2018. After 3 more years of service at the State of New York, I qualify for the medical health insurance benefit at retirement which I could have for the rest of my life. After 3 years working for the DMV, I will immediately qualify for the health insurance benefits since I already satisfy the age requirement for medical health insurance benefits at retirement which is 55. This is particularly important to me since Dr. Mayank Shukla ("Dr. Shukla"), a double-board certified allergy and pulmonology specialist, has diagnosed me with severe persistent allergy induced asthma and I see him often for treatment. (See Dr. Shukla's letters as Exhibits "A" and "C").

10. The defendants, in the job posting, invited individuals with disabilities to apply. In relevant part, the posting read the "DMV is committed to being a model employer for people with disabilities..." "...we encourage all qualified individuals to apply, including people with disabilities or any other protected category under the law." (See job posting as Exhibit "E").

These statements were made with the condition that I be a qualified applicant which I am based on my experience.

11.    Prior to my employment at the DMV, I provided the defendants with a letter from Dr. Shukla stating that I have severe persistent allergy induced asthma that causes me severe respiratory distress if I am exposed to aerosols such as Lysol. (See Dr. Shukla's letter attached as exhibit "A").    I have been seeing Dr. Shukla for persistent allergy induced asthma for several years; and I consistently have visits with him every other week for treatment including allergy immunotherapy shots. The way in which this condition affects me is that I suffer severe respiratory distress where I become unable to breath when I am exposed to cleaning products and various aerosols. (See Dr. Shukla's letters attached as Exhibits "A" and "C").   The longer I am exposed to these aerosols, the worse the condition becomes where, in the past, I have required intravenous medicine / steroids at the hospital in combination with long-term medications to breathe for the inflammation, pain, wheezing, chest tightness, chronic cough with overproduction of phlegm / sputum leading to frequent respiratory infections from the allergic response to these aerosols.

12.    At no time during my interview with Schiavo and conversations with Paula Gaylord, ("Gaylord"), Head of Personnel at the DMV, did they tell me that I would be exposed to a significant amount of spraying from cans of Lysol, Febreze and other aerosols that are purchased by the defendants and left throughout the offices and courtrooms for employees to spray into the air wherever whenever and how much they want with little to no ventilation in the office and courtrooms.

13.    Prior to beginning employment at the DMV, I made an accommodation's request for masks without the knowledge that active spraying of aerosols was occurring at the DMV since

masks do not protect me from the respiratory distress I experience from the exposure to active spraying of aerosols into the air.

14.    During my first two weeks of employment, employees sprayed Lysol, Febreze and other aerosols into the air from the multiple cans of Lysol, Febreze and other aerosol cans that I saw and that were left throughout the offices and courtrooms by defendants for employees to spray into the air. One clerk told me that he sprays Lysol into the air to mask the smell of marijuana. Administrative Law Judge Brian Levine told me that, after COVID, the defendants leave cans of Lysol all over the office and courtrooms for employees to spray into the air and that the employees in the Richmond County DMV are "addicted" to spraying it into the air.

15.    The smell from the significant amounts of these aerosols sprayed into the air and the lack of ventilation was so intense that I was unable to use the employee's bathroom, and I had to leave a courtroom, during hearings, even though I was using a mask, because something was sprayed into the air. (See email to Lisa Anson, ("Anson"), Representative from the Accommodations Unit attached as Exhibit "B"). I always wore a mask while I was at the office and courtrooms of the DMV, but this did not protect me from experiencing respiratory distress from the active spraying of aerosols in the office and courtrooms.

16.    Although I asked Schiavo and Anson several times to stop the spraying, they did not stop the distribution and placement of cans throughout the offices and courtrooms and the spraying of these aerosols into the air. (See email to Anson as Exhibit "B").

17.    After the exposure to significant amounts of aerosols sprayed in the office and courtrooms during my first 2 weeks, I became sick with respiratory distress requiring Dr. Shukla to prescribe medications so that I could breathe. (See Dr. Shukla's letter as Exhibit "C"). Dr. Shukla advised me not to return to the office.

18.    After I became sick with respiratory distress from inhaling the significant amounts of Lysol and Febreze in the offices and courtrooms of the DMV, I advised Schiavo that I had been sickened by the aerosols sprayed into the air at the DMV.   Schiavo told me to resign. Schiavo's directive to resign after I told him that I had experienced respiratory distress due to exposure to aerosol spraying at the office was motivated by irrational discriminatory animus and ill will based on my disability.

19.    On or about April 15, 2025, I applied for an accommodation to work remotely by submitting an application to Anson.  On or about April 21, 2025, Anson responded that I needed to obtain an updated letter from my doctor.  I obtained an updated letter from Dr. Shukla and I submitted it to Anson on or about April 22, 2025.  (See letter from Dr. Shukla at Exhibit "C").   To date, the defendants have denied this request.

20.    On or about the week of April 14, 2025, I attempted to contact Schiavo several times by either email or phone to ask him to allow me to work remotely doing the hearing reschedules while I awaited the response from the accommodation's unit.  During my interview, Schiavo told me that I could work 3 days per week remotely doing the hearing reschedules.  But, after I told him I had been sickened by the aerosols sprayed into air at the office and courtrooms, Schiavo refused to allow me to do the hearing reschedules and ignored my emails and phone calls. Instead, he referred me to Gaylord, who sent me several emails, including one that I have attached, with false statements about conversations she had with me and statements that I have never made. Gaylord threatened to terminate my employment in 3 days. (See email at Exhibit "D").  Schiavo and Gaylord's actions were based on an irrational discriminatory animus and ill will based on my disability.

21.    I can perform the essential functions of the job with reasonable accommodation. I have requested one of the following reasonable accommodations: 1) stop the spraying of all aerosols in the office; 2) allow me to work remotely at this job; or 3) transfer me to another position in which I can work remotely. The defendants have refused all these requests. The defendants can allow me to do the hearing reschedules remotely which is done presently by other administrative law judges and was offered to me by Schiavo at the interview. Also, the defendants can allow me to conduct hearings remotely because another DMV Administrative Law Judge, ALJ Grinberg, does all of her hearings / work remotely from out of state with the exception of appearing 1 day per month at the Richmond County DMV. While the defendants allow ALJ Grinberg, who does not have a documented disability, to do all of her work including conducting hearings remotely with the exception of appearing 1 day per month at the Richmond County DMV, the defendants have refused to allow me, who has a documented disability, to do the same based on an irrational discriminatory animus and ill will based on my disability.

22.    In the alternative, I have requested to be transferred to a vacant position in which I can work remotely.   Presently, as of July 15, 2025, there are several vacant attorney positions available at the DMV including several Administrative Law Judge positions and a Senior Attorney position. Based on my experience, I qualify for any of these positions. Moreover, the Defendant, State of New York, has over 50 vacant attorney positions with telecommuting allowed according to the job posting as listed on-line at the New York States jobs website.

23.    None of the options that I have proposed create an undue hardship because there is no significant difficulty or expense nor would it impact employer's operation in stopping the distribution and spraying of Lysol, Febreze and all other aerosols into the air in the offices and courtrooms of the DMV. In the alternative, there is no significant difficulty or expense for the

defendants nor is there an impact on the defendants' operations to allow me to do my work remotely since they already allow another Administrative Law Judge, ALJ Grinberg, to do the same. ALJ Grinberg, who does not have a documented disability, conducts all her hearings / does all her work fully remotely from another state except for appearing once a month at the Richmond County DMV. As such, allowing me, who does have a documented disability, to do the same would not impact the defendants' operations nor would it cost the defendants anything except providing me a computer / laptop. The defendants have significant resources coming from taxpayer dollars. Also, there is no significant difficulty or expense, nor would it impact defendants' operations for the defendants to transfer me to another position that I can do remotely because there are several vacant attorney positions available working for the defendants. And, arguably, based on my experience, I would be an asset to the defendants working in any of these positions.

24.    The defendants have refused all my reasonable accommodations requests and refuse to address the issue causing me respiratory distress which is the spraying of aerosols into the air during the workday. (See letters from Dr Shukla as Exhibits "A" and "C"). Instead, the defendants have offered masks, air purifiers and Seventh Generation cleaner by way of a document called an accommodation's plan that the defendants asked me to accept by signing my name to the document. I rejected this plan and never signed my name to this document. I responded that this is insufficient.

25.    Specifically, masks are insufficient since masks do not prevent me from experiencing respiratory distress from the active spraying of aerosols into the air and I was wearing masks while at the DMV and I still experienced respiratory distress; the air purifiers are insufficient because I installed them while I was at the DMV and they did not stop me from experiencing respiratory distress; and Seventh Generation products are insufficient since these products are for

cleaning surfaces and should be used for cleaning by environmental people not for spraying into the air to mask smells as spraying any aerosols into the air, including Seventh Generation, into the offices and courtrooms would cause me respiratory distress. (See Dr. Shukla's letter at Exhibit "A" and "C" to Second Amended Complaint). Furthermore, the Safety Data Sheet for Seventh Generation states that this product's use is for hard surface disinfecting and cleaning; and it is a violation of federal law to use this product in a manner inconsistent with its labeling. (See Exhibit "F" to the Second Amended Complaint). As such, Seventh Generation is meant to be used as a surface cleaner, and it is not meant to spray into the air as that is an improper use of this product and against federal law.    Furthermore, Dr. Shukla, a double board-certified allergy and pulmonology specialist, has provided two letters to the defendants that state that he has diagnosed me with severe persistent allergy induced asthma and that I cannot be exposed to aerosols sprayed into the air as they cause severe respiratory distress. (See Dr. Shukla's letter attached as Exhibits "A" and "C").

26.    The defendants are denying me access to a myriad of benefits including an income, paid leave, paid holidays, pension, health insurance, dental and vision coverage, flex spending, voluntary 457B Retirement Saving Program, Health Care Spending Account, Tuition Assistance Programs, Public Service Loan Forgiveness Program, Transportation Savings Program and other Employee Assistance Programs and access to the medical health insurance benefits in 3 years that would last for the rest of my life because they refuse to provide me with one of several reasonable accommodations I have requested.

## CAUSE OF ACTION

### Declaratory Relief

27.    I re-allege and incorporate herein all previously alleged paragraphs in this Complaint.

28.    A present and actual controversy exists between the defendants and I concerning rights and respective duties.  I contend that defendants violated my rights under Section 504 of the Rehabilitation Act.

29.    Defendants disagree with my contention.

30.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective right and duties and act accordingly.

WHEREFORE, I pray for relief as set forth below.

### PRAYER FOR RELIEF

31.    Declaratory judgment finding defendants acts, practices and omissions complained herein to be in violation of my rights under the Rehabilitation Act Section 504.

32.    Awarding back pay, reasonable attorneys' fees and costs; and

33.    Such other and further relief as this Honorable Court deems necessary, just and proper.

Dated:   July 17, 2025
Staten Island, NY

Respectfully submitted,

_____
Alexia Dodd

# EXHIBIT A

X  📄 .CAPOTE, ALEXIA medical note.pdf        Open with ▾

CAPOTE, ALEXIA (DOB: 08/08/1969  ID: 1002121490) Printed on: 03/21/2025                    Printed on: 03/21/2025

## Allergy Asthma Sleep Center
### Shukla, Mayank, MD
Tel:212-661-7077
Fax: (347)462-0194

| 345 E. 37th Street Room 319 New York, NY 10016 | 314 Seaview Avenue Staten Island, NY 10305 | 3272 Steinway Street Lower Level 1 Astoria, NY 11103 | 2833 Ocean Parkway Brooklyn, NY 11235 | 186 Hylan Boulevard Staten island, NY 10305 |

CAPOTE, ALEXIA
280 POTTER AVENUE
STATEN ISLAND NY 10314

March 21st, 2025

To Whom it May Concern:

Patient Capote, Alexia (08/08/1969) is a patient under my care who is being treated for severe persistent allergy-induced asthma, she also has significant allergies. We recommend not to allow patient be exposed to aerosols such as Lysol as it can cause severe respiratory distress on the patient.

If you have any concerns please reach out to my office at 212-661-7077.

Sincerely,

Dr. Mayank Shukla
Pulmonology and Sleep Medicine
NYS Lic# 249523

Allergy Asthma Sleep Center
Mayank Shukla M.D.
Tel: 212-661-7077 Fax: (47-462-0194
Lic 249523 NPI 1356403042

Page  1  /  1    —  🔍  +

# EXHIBIT B

A CD <acapotedodd@gmail.com>                                          Wed, Apr 9, 2025 at 10:15 AM
To: "dmv.sm.DiversityandInclusion" <DiversityandInclusion@dmv.ny.gov>

Good morning. Please stop spraying aerosols into the air in office and courtrooms. Something was sprayed in courtroom 3 that is affecting my allergy asthma. Can you tell me what was sprayed into the air in courtroom 3?

[Quoted text hidden]

---

dmv.sm.DiversityandInclusion <DiversityandInclusion@dmv.ny.gov>      Wed, Apr 9, 2025 at 10:28 AM
To: A CD <acapotedodd@gmail.com>
Cc: "Schiavo, Michael (DMV)" <Michael.Schiavo@dmv.ny.gov>

Good morning,

I don't work in your office, please communicate with your supervisor these issues.

Thanks,

LISA ANSON *(she/her)*

Diversity, Equity & Inclusion

Department of Motor Vehicles

6 Empire State Plaza

Albany, NY 12228

(518) 474-2056 | Lisa.anson@dmv.ny.gov

dmv.ny.gov

**New York State Domestic and Sexual Violence Hotline**

Text: 844.997.2121 | Call: 800.942.6906 | Chat: opdv.ny.gov

**Free. Confidential. 24/7. Available in most languages.**

*"Survivor-Centered, Trauma-Informed, Culturally Responsive"*

**Are you in crisis, experiencing emotional distress, or worried about someone you know?**

**Call or text 988 or chat at** 988lifeline.org/chat **24 hours a day, 7 days a week.**

# EXHIBIT C

X  📄 Akexia Capote Remote Work.pdf          Open with ▼                                    ⬢+  🖨  ⬇  ⋮

CAPOTE, ALEXIA (DOB: 08/08/1969 ID: 1002121490) Printed on: 04/23/2025                                    Printed on: 04/23/2025

# Allergy Asthma Sleep Center
## Shukla, Mayank, MD
Tel:212-661-7077
Fax: (347)462-0194

| | | | | |
|---|---|---|---|---|
| 345 E. 37th Street Room 319 New York, NY 10016 | 314 Seaview Avenue Staten Island, NY 10305 | 3272 Steinway Street Lower Level 1 Astoria, NY 11103 | 2833 Ocean Parkway Brooklyn, NY 11235 | 186 Hylan Boulevard Staten island, NY 10305 |

CAPOTE, ALEXIA
280 POTTER AVENUE
STATEN ISLAND NY 10314

Date: April 22, 2025

Re: Capote, Alexia DOB 08/08/1969

To Whom It May Concern,

Mrs. Alexia Capote is a patient under my care at Allergy Asthma Sleep Center. Mrs. Capote is currently under treatment for Severe Persistent Asthma, for which she is taking Advair 250-50 mcg 1 puff twice per day. Her asthma is triggered by a variety of environmental factors, including cleaning products and various aerosols. Due to her reaction to these substances, Mrs. Capote should be kept in an environment that is free of them to ensure her continued health. If this is not possible, please give Mrs. Capote the opportunity for remote work to avoid exacerbations of her asthma.

Please don't hesitate to reach out with any questions or concerns.

Sincerely,

Dr. Mayank Shukla, MD
Pulmonology, Critical Care, and Sleep Medicine
NYS Lic#: 249523

https://mail.google.com/mail/u/0/#search/shukla?projector=1                                    1/1

# EXHIBIT D

4/24/25, 12:06 PM                                           Gmail - Today

 Gmail                                                                    A CD <acapotedodd@gmail.com>

## Today

**Gaylord, Paula (DMV)** <Paula.Gaylord@dmv.ny.gov>                      Tue, Apr 22, 2025 at 5:28 PM
To: A CD <acapotedodd@gmail.com>

Good afternoon Alexia,

Emily Kobello and I had several conversations with you prior to your start date, when you asked if you could do onboarding remotely, and we let you know the MV Referee position you accepted does not provide for telecommuting. You stated you fully understood that, but you said your doctor insisted you needed a special mask in order to come into the workplace. We let you know how to go through the reasonable accommodation process, but you stated you did not want to push off your start date, said you went ahead and purchased the mask your doctor advised, and you were willing and able to come to the workplace the next day, 3/27/25 without waiting for the reasonable accommodation process to play out. I let you know at that time, again, that the position you accepted as an MV Referee requires extensive, in-person, face to face customer service, and there is no accommodation that would be able to control the actions of the general populace, but that the DEI office would work with whatever your doctor provides. It was my understanding you came to work, and Diversity worked with you and provided your accommodations.

I have since been informed you are refusing to come to work, are attempting to have your supervisor Mr. Schiavo informally accommodate you by sending you "remote work", which we established is not an option for the position you accepted. Additionally, my benefits and leaves unit has not received any medical documentation that would cover an absence from work on a medical leave. If you are refusing to return to work after having been provided the accommodations, and have not provided documentation to cover your absence, this email is to inform you that you are on unauthorized leave with out pay. If you are going to remain out on medical leave of absence we need medical documentation covering whatever your first day out, with a diagnosis as you are PEF, and states you need to be absent through an anticipated return to work date. For your convenience, I have attached a Physician Certificate Form for your doctor to complete and return to me within three day of receipt of this email. If I do not receive documentation to cover your absence you may face further administrative action including possible recommendation for termination of employment.

Additionally, because you have never completed your LATS, you have been overpaid and are going to owe arrears (see attached leave without pay "LWOP" info) as well as any overpayment of wages for time not worked or approved to charge.

Please let me know if you have any questions.

PAULA GAYLORD *(she/her)*

Director of Personnel

Department of Motor Vehicles

6 Empire State Plaza, Core 3, Room 136A

Albany, NY 12228

(518) 486-9659| Paula.Gaylord@dmv.ny.gov

# EXHIBIT E

An official website of New York State.
Here's how you know ∨



Q

 **StateJobsNY**

## Review Vacancy

**Date Posted:** 06/24/25
**Applications Due:** 08/31/25
**Vacancy ID:** 190888

### Position Information

| | |
|---|---|
| **NY HELP** | Yes |
| **Agency** | Motor Vehicles, Department of |
| **Title** | Administrative Law Judge/Assistant Administrative Law Judge (NY HELPS) - Richmond County |
| **Occupational Category** | Legal |
| **Salary Grade** | 25 |
| **Bargaining Unit** | PS&T - Professional, Scientific, and Technical (PEF) |
| **Salary Range** | From $82326 to $121413 Annually |
| **Employment Type** | Full-Time |
| **Appointment Type** | Permanent |
| **Jurisdictional Class** | Non-competitive Class |
| **Travel Percentage** | 0% |

### Schedule

| | |
|---|---|
| **Workweek** | Mon-Fri |
| **Hours Per Week** | 37.5 |

### Workday

| | |
|---|---|
| **From** | 8:30 AM |
| **To** | 4:30 PM |

sound judgment, excellent oral communication skills.

| Additional Comments | **Positions available in all five Metro Counties (New York, Bronx, Kings, Richmond, and Queens)** Appointees who work in the five boroughs of New York City or in Nassau, Suffolk, Rockland, or Westchester Counties will receive an additional $4,000 annual downstate adjustment.<br><br>Hours of the position will be discussed at the time of interview, including questions regarding Flextime, AWS/Compressed work week and Telecommuting.<br><br>There are many benefits to working for the DMV! Including:<br>o Paid Leave<br>o Paid Holidays<br>o Pension<br>o Health Insurance<br>o Dental & Vision Coverage<br>o Flex Spending<br>o Voluntary 457B Retirement Saving Program<br>o Health Care Spending Account<br>o Tuition Assistance Programs<br>o Public Service Loan Forgiveness Program<br>o Transportation Savings Program<br>o Employee Assistance Programs<br>For additional information about the benefits of being a state employee, visit the Office of Employee Relations website at https://oer.ny.gov/employee-benefit-programs.<br><br>DMV is committed to being a model employer for people with disabilities. DMV's commitment includes ensuring that the recruitment, application, interviewing and hiring processes are accessible to all job applicants. If you are a job applicant who may need a reasonable accommodation for any part of the application and hiring process, please contact DMV's Office of Diversity, Equity, Inclusion & Accessibility at diversityandinclusion@dmv.ny.gov.<br><br>The Department of Motor Vehicles is committed to diversity and equal opportunity, and to building a team that represents a variety of backgrounds, perspectives, and skills. We are proud to be an equal opportunity workplace, and we encourage all qualified individuals to apply, including people with disabilities or any other protected category under the law. Our goal as an employer is to reflect the diverse identities, experiences and geographies of the communities and customers we serve. |
| --- | --- |





Some positions may require additional credentials or a background check to verify your identity.

## How to Apply

| Name | DMV Hiring |
| --- | --- |
| Telephone | |
| Fax | |
| Email Address | dmv.sm.HELPSLegal@dmv.ny.gov |

## Address

# EXHIBIT F

# SAFETY DATA SHEET



seventh generation

| Issue date | 11 | February | 2019 | | FM000054-00.4 |
|---|---|---|---|---|---|

This Safety Data Sheet (SDS) is provided to assist with proper use and safe handling of this product. This product may be packaged for professional use or consumer use. Applicable professional use directions are provided on the product label and are included for easy reference in Section 16 of this SDS, and applicable professional use safety information is included on the product label and in this SDS. The U.S. OSHA Hazard Communication Standard (29 CFR 1910.1200) does not apply to "consumer products" as defined by the U.S. Consumer Product Safety Act and Federal Hazardous Substances Act, including consumer products used in the workplace under typical duration and frequency of exposure as experienced by consumers when used for the intended purpose. Applicable consumer product use and safety information is provided on the product label and is included for easy reference in Section 16 of this SDS. This SDS is designed to cover both U.S. and Canada. Differences between U.S. and Canadian requirements are noted where applicable.

## Section 1: Identification of Product and Company

| | |
|---|---|
| Product Name | Disinfecting Multi-Surface Cleaner - Lemongrass Citrus |
| Synonyms | None |
| Product Use | Hard Surface Disinfecting and Cleaning |
| Restrictions on Use | Follow directions on the product label<br>For sale in the U.S. and Canada only. Not for export. |

| | |
|---|---|
| Manufacturer Name | Seventh Generation, Inc. |
| Address | 60 Lake Street, Burlington, VT 05401, USA |

| | |
|---|---|
| Emergency Telephone Number | U.S., Canada |
| Monday -Friday 8 am - 5 pm ET (except holidays) | 1-800-211-4279 |
| Outside these hours | 1-800-255-3924 (ChemTel) |

## Section 2: Hazards Identification

| Classification | |
|---|---|
| U.S. | This product is not considered hazardous under the 2012 OSHA Hazard Communication Standard (29 CFR 1910.1200). |
| Canada | This product is not considered hazardous under the WHMIS 2015. |

## Section 3: Composition, Information on Ingredients

Regardless of hazard classification, Seventh Generation discloses all intentionally added ingredients and, if applicable incidental ingredients ≥1% on the consumer product label.

| Ingredient | Function | CAS Number | Concentration[1] |
|---|---|---|---|
| Active ingredient | | | |
| thymol | antimicrobial active | 89-83-8 | 0.05% |
| Other ingredients: | | | 99.95% |
| aqua (water) | diluent | 7732-18-5 | |
| sodium lauryl sulfate | cleaning agent | 68585-47-7 | <1% |
| sodium citrate | water softener | 6132-04-3 | |
| citric acid | water softener | 77-92-9 | |
| copper sulfate pentahydrate (bluestone) | water mineralizer | 7758-99-8 | <0.1% |
| essential oils* | fragrance | mixture | <0.1% |

*Lemongrass Citrus Scent: cymbopogon nardus (citronella) oil, cymbopogon schoenanthus (lemongrass) oil. Citral is a component of these fragrance ingredients.

# SAFETY DATA SHEET



[1] Where ranges are shown, the exact concentration has been withheld as a trade secret.

## Section 4: First Aid Measures

| | |
|---|---|
| Eye Contact | Hold eye open and rinse slowly and gently with water for 15-20 minutes. Remove contact lenses, if present, after the first 5 minutes, then continue rinsing. Call a doctor or poison control center for treatment advice. |
| Skin Contact | Rinse thoroughly with water. Call a physician if irritation or rash develops or persists. |
| Ingestion | Have person sip a glass of water if able to swallow. Do not induce vomiting unless told to by a doctor or poison control center. Do not give anything to an unconscious person. |
| Inhalation | If irritation occurs, remove to fresh air. If breathing is affected, call a physician. |
| Notes to Physician | Treat symptomatically. |
| Most important symptoms and effects | Acute exposure may result in eye irritation. Symptoms of acute exposure may include the following: redness and pain. |

## Section 5: Fire Fighting Measures

| | |
|---|---|
| Suitable Extinguishing Media | As appropriate for surrounding fire. Use water, dry chemical, carbon dioxide or foam. |
| Unsuitable Extinguishing Media | Not available. |
| Specific Hazards arising from the chemical mixture | Not available. |
| Hazardous Combustion Products | Not available. |
| Protective Equipment and Precautions for Firefighters | Fire fighters should wear full protective clothing and self contained breathing apparatus as for surrounding fire. |

## Section 6: Accidental Release Measures

| | |
|---|---|
| Personal Precautions | |
| Industrial Setting | Wear appropriate personal protective equipment (refer to Section 8). |
| Environmental Precautions | Avoid entry into lakes, streams, ponds or public waterways. |
| Methods for Containment and Cleaning Up | |
| Industrial Setting | Before attempting clean up, refer to hazard data given. Small spills may be absorbed with non-reactive absorbent and placed in suitable, covered, labeled containers. Prevent extremely large spills from entering sewers or waterways. Dispose in accordance with all applicable local, state, and federal regulations. |
| Household Setting | Small spills and leaks may be cleaned up and disposed of in normal household trash. |

## Section 7: Handling and Storage

| | |
|---|---|
| Safe Handling | |
| Industrial Setting | Wear appropriate personal protective equipment (refer to section 8). |
| Household Setting | Use as directed on product label. |
| Safe Storage | KEEP OUT OF REACH OF CHILDREN AND PETS.<br>Nonrefillable container. Store airtight at room temperature in original container and keep container closed when not in use.<br>Avoid freezing. |
| Storage Incompatibilities | None known. |

## Section 8: Exposure Controls, Personal Protection

| | |
|---|---|
| Exposure Limits | Occupational exposure limits |

# SAFETY DATA SHEET



| Component Information: | |
|---|---|
| | . . |
| Engineering Controls | General ventilation. |
| Personal Protective Equipment (PPE) | |
| Industrial Setting | |
| Respiratory Protection | None required under normal conditions.  General ventilation required. |
| Eye Protection | Goggles or other protective eye wear may be worn for protection. |
| Skin Protection | Gloves may be worn for protection. |
| Hygiene Measures | Handle in accordance with good industrial hygiene and safety practice. |
| Household Setting | No special precautions necessary as long as product is used as directed. |

## Section 9:  Physical and Chemical Properties

| | |
|---|---|
| Physical State | Liquid. |
| Color | Colorless (water-white) |
| Clarity | Clear |
| Odor | Fragranced.  Characteristic of the ingredients |
| Odor Threshold | Not available. |

| | |
|---|---|
| pH | 4.0 - 5.0 |
| Melting Point | As per water. |
| Freezing Point | As per water. |
| Initial Boiling Point and Boiling Range | As per water. |
| Flash Point | Not available.  Aqueous Solution. |
| Evaporation Rate | As per water. |
| Upper Explosive Limit (UEL) | Not applicable. |
| Lower Explosive Limit (LEL) | Not applicable. |
| Vapor Pressure (mmHg) | Not available. |
| Specific Gravity (H2O = 1) | 1.00 - 1.02 |
| Relative Density | Not available. |
| Vapor Density (Air = 1) | Not available. |
| Solubility in Water | Soluble |
| Partition Coefficient:  n-octanol/water | Not available. |
| Auto-Ignition Temperature | Not combustible. |
| Decomposition Temperature | Not available. |
| Viscosity | Not available. |
| VOC (weight %) | Not available. |
| Flammability | Not flammable. |

## Section 10:  Stability and Reactivity

| | |
|---|---|
| Reactivity | Not available. |
| Chemical Stability | Stable under normal conditions of use and storage. |
| Possibility of Hazardous Reactions | None known. |
| Conditions to Avoid | None known. |
| Incompatible Materials | |
| Industrial Setting | None known. |
| Household Setting | In general, cleaning products should not be mixed with other household chemicals, unless specifically provided for in the use directions. |
| Hazardous Decomposition Products | None known. |

## Section 11:  Toxicological Information

# SAFETY DATA SHEET



| Potential Route(s) of Exposure | Eyes. Skin. Ingestion. Inhalation. | |
|---|---|---|
| **Effects of Acute Exposure** | | |
| Oral Toxicity | LD50 >5000 mg/kg, calculated based on ingredients. | |
| Dermal Toxicity | Not determined. | |
| Inhalation Toxicity | Not determined. | |
| Component Information[1]: | | |
| thymol | 89-83-8 | LD50 acute oral (rat) 980 mg/kg |
| aqua (water) | 7732-18-5 | Not applicable |
| sodium lauryl sulfate | 68585-47-7 | LD50 acute oral (rat) 1288 mg/kg |
| sodium citrate | 6132-04-3 | LD50 acute oral (rat) 5400 mg/kg |
| citric acid | 77-92-9 | LD50 acute oral (rat) 5400 mg/kg |
| copper sulfate pentahydrate (bluestone) | 7758-99-8 | LD50 acute oral (rat) 960 mg/kg |
| essential oils* | mixture | LD50 acute oral (rat), calculated >5000 mg/kg |
| . | . | . |
| Eye Contact | Minimal eye irritant category IV, based on ingredients. | |
| Skin Contact | None to slight dermal irritant category IV, based on ingredients. | |
| **Skin Sensitization** | Not classified for skin sensitization, based on ingredients. | |
| **Respiratory Sensitization** | Not classified for respiratory sensitization, based on ingredients. | |
| **Carcinogenicity** | Not classified - based on ingredients | |
| NTP | No Ingredients Listed | |
| IARC | No Ingredients Listed | |
| OSHA | No Ingredients Listed | |
| **Reproductive Effects** | Not classified - based on ingredients | |
| **Mutagenicity** | Not classified - based on ingredients | |
| **Specific Target Organ Toxicity - Single Exposure** | Not classified - based on ingredients | |
| **Specific Target Organ Toxicity - Repeat Exposure** | Not classified - based on ingredients | |
| **Aspiration Toxicity** | Not classified - based on ingredients | |

[1]LD50 acute oral toxicity (rat) – This is a value provided by the raw material supplier or scientific literature. It is not a value generated by Seventh Generation by testing using rats. Seventh Generation uses alternative, non-animal based methods and scientific literature to determine the safety classification of our products and their ingredients.

## Section 12: Ecological Information

| Ecotoxicity | Not available. |
|---|---|
| Persistence and Degradability | Meets requirements for ready biodegration based on OECD 301B. |
| Bioaccumulative Potential | No known significant effects or critical hazards. |
| Mobility in Soil | Not available. |
| Environmental Fate | No adverse effects expected. |

## Section 13: Disposal Considerations

| Product Waste | Any disposal must be in compliance with applicable local, state, provincial and federal laws and regulations. |
|---|---|
| Industrial Setting | When disposed as waste in its original form, this product is not considered hazardous waste under Federal regulations, however regulations may vary by state or province and may designate it as hazardous waste. Check with your local waste and waste water authorities. We are aware of the following state waste classifications: |
| California Hazardous Waste Code | 232 |

# SAFETY DATA SHEET



| | |
|---|---|
| Connecticut Hazardous Waste Code | CT04 |
| Michigan Liquid Waste Code | 029L |
| Vermont Hazardous Waste Code | VT06 |
| Washington Hazardous Waste Code | WT02 |
| Household Setting | Product residues in the container may be discarded in trash.<br><br>Compatible with septic systems. |
| Empty Packaging | Offer empty container for recycling.  If recycling is not available, discard in trash. |

## Section 14:  Transport Information

| | |
|---|---|
| U.S. DOT | Not regulated. |
| U.S. States | See U.S. DOT for finished product classification for transport. |
| Waste | Regulated in some states if the product is disposed of in its original form as waste by commercial users/handlers.  Refer to Section 13. for applicable state waste codes. |
| Canadian TDG (Surface Transport) | Not regulated. |
| IMDG (Marine Transport) | Not regulated. |
| IATA (Air Transport) | Not regulated. |

## Section 15:  Regulatory Information

| | |
|---|---|
| U.S. | |
| Toxic Substances Control Act (TSCA) | This product complies with the inventory requirements of the U.S. Toxic Substances Control Act (TSCA). |
| EPA Registration Number | 84683-3-86066. |
| | When labeled with this registration number this product is for sale in the U.S. 50 states and D.C. only.  Not registered for export to or sale in other countries. |
| California DPR Registration Number | 84683-3-ZA-86066 |
| California Prop 65 | This product is not subject to the labeling requirements of California's Proposition 65. |
| California Air Resources Board (CARB) | Meets applicable California Air Resource Board requirements for consumer products. |
| Canada | |
| Domestic Substances List (DSL) | This product complies with the inventory requirements under Canada's Domestic Substances List (DSL). |
| Health Canada Registration Number | DIN 02415070 |
| | When labeled with this registration number this product is for sale in Canada only.  Not registered for export to or sale in other countries. |
| Right to Know | Regardless of hazard classification, Seventh Generation discloses all intentionally added ingredients and, if applicable incidental ingredients ≥1% on the product label.  Please refer to Section 3. of this SDS for ingredient listing. |
| Component Information: | |
| . | . | . |
| Other | Fragrances used in this product comply with applicable International Fragrance Association (IFRA) guidance. |

# SAFETY DATA SHEET



| Section 16:  Other Information | | |
|---|---|---|

| Hazardous Materials Identification System (HMIS) Rating | HEALTH | 0 |
|---|---|---|
| Legend: 4-Severe, 3-Serious, 2-Moderate, 1-Slight, 0-Minimal | FLAMMABILITY | 0 |
| | PHYSICAL HAZARDS | 0 |
| | PERSONAL PROTECTION | A |

| National Fire Protection Association (NFPA) Rating | Not determined. |
|---|---|

**Consumer Product Label Information**

USA:
KEEP OUT OF REACH OF CHILDREN
DIRECTIONS FOR USE
It is a violation of Federal law to use this product in a manner inconsistent with its labeling.  For heavily soiled or greasy areas, pre-cleaning is required.
TO CLEAN:  Wet the surface with the spray & wipe clean.  For stubborn stains, let stand for a few minutes.  Allow to penetrate, then wipe clean.
TO DISINFECT & DEODORIZE:  1. Wet the surface with the spray (spot test to check surface compatibility).  2. Leave for 10 minutes. Allow to air-dry.  No rinsing or wiping is required (even on food contact surfaces).
STORAGE & DISPOSAL
Store airtight at room temperature.  Nonrefillable container.  Do not reuse or refill this container.  Offer empty container for recycling.  If recycling is not available, discard in trash.

CANADA:
KEEP OUT OF REACH OF CHILDREN
INSTRUCTIONS
TO CLEAN & DEODORIZE: Wet the surface with the spray & wipe clean.
TO DISINFECT:  1. Wet the surface with the spray (spot test to check surface compatibility).  2. Leave for 10 minutes.  Allow to air-dry.  No rinsing or wiping is required.  For heavily soiled or greasy areas, pre-cleaning is required.
STORAGE AND DISPOSAL
Store airtight at room temperature.  Please recycle empty container.
FIRST AID
May sting if accidentally sprayed in eyes.  Soothe by rinsing with clean water.

| Prepared by | Seventh Generation Inc. |
|---|---|
| Issuing Date | 11 February 2019 |
| Revision Date | 11 February 2019 |
| Revision Note | Revised Sections 3, 11 and 15. |

**Please note:**  This product is manufactured and marketed for professional use or consumer use and should be used as directed on the product label for the intended purpose.  Seventh Generation warrants that this product conforms to our standard specification when released to the market and when used according to directions.  To the best of our knowledge, the information contained herein is accurate.  However, we do not assume any liability whatsoever for the accuracy or completeness of the information contained herein.  Final determination of the suitability of any product is the sole responsibility of the user.  All products may present unknown hazards and should be used with requisite caution.  Although certain hazards are described herein, we cannot guarantee that these are the only hazards that exist.

Other abbreviations used in this document:
    DOT – (U.S.) Department of Transportation
    EPA – (U.S.) Environmental Protection Agency
    IARC – International Agency for Research on Cancer

# SAFETY DATA SHEET



NTP – (U.S. Department of Health and Human Services) National Toxicology Program
OSHA – (U.S.) Occupational Safety and Health Administration
TDG – (Canadian) Transport of Dangerous Goods
WHMIS – (Canadian) Workplace Hazardous Materials Information System

**End of Safety Data Sheet**